ItKLEES, Judge.
Plaintiff appeals a judgment of the trial court dismissing his claims based on the doctrine of res judicata. We affirm.
In April of 1992 the plaintiff, Robert May-ronne, was investigated by the Office of Community Services (OCS) for alleged sexual abuse of his children. OCS contacted Valerie Turgeon, a developmental psychologist, and asked her to conduct an examination of the Mayronne family.
The plaintiff filed actions in federal and state courts alleging that the actions of OCS and Dr. Turgeon violated his and his children’s Constitutional and civil rights. The plaintiff asserted that in the course of the investigation, Dr. Turgeon violated reasonably accepted standards of investigation and professional conduct. Additionally, the plaintiff asserted that Dr. Turgeon’s actions constituted malpractice under state law.
The federal court action on all issues except malpractice was dismissed on summary judgment for failure to state a claim. The state court action was subsequently dismissed by the trial court under the doctrine of res judicata because of the earlier federal district court’s judgment.
The plaintiff appeals this decision asserting that the federal district court did not in fact have subject matter jurisdiction over the state claims, and therefore his subsequent state action was not barred by the doctrine of res judicata. We find that the trial court was correct in its finding that the federal court properly asserted pendent jurisdiction over all of the state law claims except the malpractice claim, and thus appropriately dismissed the plaintiffs other claims based on the doctrine of res judicata.

FACTS:

In April of 1992 the plaintiffs wife contacted a social worker at OCS, and accused the plaintiff of sexually abusing their son. OCS began an investigation in May of 1992. It contacted defendant, Valerie Turgeon, a developmental psychologist, and asked her to conduct psychological evaluations of the May-ronne family and to submit a written report. Dr. Turgeon subsequently submitted a report to OCS indicating that the plaintiff |2was a child molester. After numerous interviews and discussions with the entire family, OCS sent a report to the St. Tammany Parish District Attorney stating that the child abuse charges were “valid.” The “valid” finding was based on the son’s statements to the OCS specialist and Dr. Turgeon’s report. The plaintiff was arrested thereafter on charges of sexually abusing his son. However, upon further investigation by the St. *392 Tammany Parish District Attorney, these charges were dropped and no further action was taken.
The plaintiff alleged that the actions of OCS fell below any reasonable standard for such an investigation. Plaintiff further alleged that the OCS specialist directed his son to answer as he was instructed. Because of these tactics, the OCS specialist obtained statements suggesting that the plaintiff had abused his son. Additionally, the plaintiff claimed that OCS ignored the policies and regulations of their agency and applicable state law governing child abuse, and that OCS communicated the results of their investigation to the St. Tammany District Attorney in bad faith, with the intent to harm the plaintiff. With respect to Dr. Turgeon, the plaintiff claimed that she aided and abetted OCS by conducting an investigation which failed to meet any reasonable standard of her profession, including failure to abide by established procedures. As a result of the substandard investigation, the plaintiff argued that Dr. Turgeon effectively conspired with OCS to deny the plaintiff and his children their civil rights.
The plaintiff filed suit in federal court in April of 1993. In his petition, plaintiff asserted that the federal court had jurisdiction pursuant to 42 U.S.C. § 1983. Simultaneously, the plaintiff filed suit in Civil District Court for the Parish of Orleans. The pleadings filed in state court and federal court were identical, except that the federal complaint contained the subject matter jurisdiction assertion, and the state petition contained an allegation of joint and several liability. The plaintiff withheld service of the state court petition. In response to the federal petition, the defendants filed Exceptions of Res Judicata and No Cause of Action. They claimed that under theories of res judi-cata and claim preclusion, the plaintiff was barred from proceeding with a cause of action not specifically raised in the federal complaint pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 17(b), or in the alternative, they claimed that summary judgment should be granted pursuant to Fed.R.Civ.P. 56. Subsequent to the plaintiff filing his | .¡¡action in federal court, but prior to the court’s ruling on the defendants’ motions, the United States Court of Appeals for the Fifth Circuit decided Doe v. State of Louisiani, 2 F.3d 1412 (5th Cir.1993), cert, denied, — U.S. -, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). In Doe the Fifth Circuit reversed a lower court decision and ruled that plaintiffs who were victims of unreasonable child abuse investigations and accusations by OCS workers had no actionable right under federal law. Based on that decision, the federal court dismissed the plaintiffs federal action and refused to accept jurisdiction over the malpractice claims.
Following that judgment, the plaintiff served the state court petition. The defendants filed Exceptions of Lack of Procedural Capacity, No Cause of Action and Res Judi-cata.
At the hearing on the exceptions, the state trial judge sustained the Exceptions of Lack of Procedural Capacity and Res Judicata as to all claims except the malpractice claim. The Exception of No Cause of Action directed to the malpractice claims was denied. It is from this judgment that the plaintiff appeals.

LAW AND ANALYSIS:

The purpose of the doctrine of res judicata, or claim preclusion, is to avoid claim splitting and piecemeal litigation which forces a party to defend numerous and discrete lawsuits. When a state court is required to determine the preclusive effects of a judgment rendered by a federal court exercising federal question jurisdiction, it is the federal law of res judicata that must be applied. Reeder v. Succession of Palmer, 623 So.2d 1268, 1271 (La.1993), cert, denied, — U.S. -, 114 S.Ct. 1191, 127 L.Ed.2d 541 (1994). Under federal precepts, “claim preclusion” or “true res judicata” treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same “claim” or “cause of action.” When the plaintiff obtains a judgment in his favor, his claim “merges” in the judgment. Conversely, when a judgment is rendered for a defendant, the plaintiffs claim is extinguished; the judgment then acts as a “bar.” Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all is *393 sues between the same parties, whether or not raised at trial. The aim of claim preclusion is to avoid multiple suits on identical issues. Id.
|4The initial determination for a court applying res judicata is whether or not the federal district court had subject matter jurisdiction over the issues. If there is subject matter jurisdiction, then any state law claims may be heard through pendent jurisdiction by the federal district court. Generally speaking, pendent jurisdiction is the power of a federal court having jurisdiction over a federal claim to hear any state claims pending between the same parties, arising out of the same facts, in the interest of judicial economy. A federal court must consider and weigh in each case the values of judicial economy, convenience, fairness and comity in order to determine whether to exercise jurisdiction over a case involving state law claims. The doctrine of pendent jurisdiction is one of flexibility which allows courts to deal with pendent claims in the manner that most sensibly accommodates a range of concerns and values. Camegie-Mellon Univ. v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), Reeder, 623 So.2d at 1274.
The plaintiff claimed that his civil rights were violated by the defendants under 42 U.S.C. § 1983. Federal jurisdiction over such civil rights claims is granted under 28 U.S.C. § 1343, which provides in pertinent part:
(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.
The plaintiff now argues that the Fifth Circuit’s holding in Doe, applying the doctrine of qualified immunity to OCS workers, removed subject matter jurisdiction from the hands of the federal district court. Therefore, because the federal court never had subject matter jurisdiction, it could not exercise pendent jurisdiction over the state law claims. This is a clear misreading of the Doe decision.
The court in Doe held that “[c]hild care workers are entitled to qualified immunity in the performance of discretionary, nonprose-cutorial functions.” Doe v. State of Louisiana, 2 F.3d at 1416. Qualified immunity shields government officials performing discretionary functions “from liability for civil damages insofar as their Rconduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” See Doe, 2 F.3d at 1416. The federal court relied on the Doe decision, finding that the plaintiffs Section 1983 claims were barred by qualified immunity, except to the remaining malpractice claim, which it specifically dismissed for the lack of subject matter jurisdiction. The federal court did not state that it declined jurisdiction over any other state claims that may have existed.
Contrary to plaintiffs assertions, qualified immunity does not remove the adjudication of Section 1983 claims from the federal courts, but rather provides an affirmative defense. Qualified immunity does not act as an absolute bar, but rather as a threshold over which a plaintiff must pass to continue litigation. Accordingly, the federal court did not dismiss plaintiffs’ case on a determination of a lack of subject matter jurisdiction, but rather dismissed the case because it found that the defendants successfully evoked the qualified immunity doctrine defense. This was a determination on the merits of the case itself, not a jurisdictional determination. By this ruling, the federal court specifically recognized that it had juris-diction, except over the malpractice claims; claims which it carefully noted it declined to entertain.
*394 The Louisiana Supreme Court has specifically addressed issues of res judicata, pendent jurisdiction, and claim preclusion of state claims in Reeder, supra. The Court stated that claim preclusion will bar a subsequent action on res judicata principles where parties have previously litigated the same claim to a valid judgment. In most cases the key question to be answered in adjudging the propriety of a claim preclusion defense is whether in fact the claim in the action is “the same as,” or “identical to,” the one upon which the parties have previously proceeded to a final judgment. The Court did not settle on a single definition for the terms “claim” or “cause of action.” However, it did rely heavily on the standard of federal pendent jurisdiction which requires a “common nucleus of operative facts.” See Reeder, 623 So.2d at 1271. The Reeder court thus held that if a set of facts gives rise to a claim based both on state and federal law, and the plaintiff brings the action in a federal court which has pendent jurisdiction to hear the state cause of actions, but the plaintiff fails or refuses to assert his state law claim, resj^judicata prevents him from subsequently asserting the state law claim in a state court action, unless the federal court clearly would not have had jurisdiction to entertain the omitted state claim, or, having jurisdiction, clearly would have declined to exercise it as a matter of discretion. Reeder, 623 So.2d at 1272-1273.
Applying this analysis, we must determine if the state claims dismissed by the federal district court were part of the same “common nucleus of operative facts” litigated to a valid judgment in the federal court; and if there was pendent jurisdiction, did the federal district court clearly decline to exercise this jurisdiction as a matter of discretion?
It is clear that the present state law claims arose from the same set of facts alleged in the federal court suit. The actions which gave rise to the alleged civil rights and Constitutional violations also gave rise to the alleged malpractice claims. All of these alleged violations stem from the single report and findings provided to OCS by Dr. Tur-geon. To entertain these same issues again in state court would defeat the basic premise for the doctrine of res judicata.
Therefore, according to the Reeder decision, the only way for the plaintiff to maintain a second action in state court is if the federal court clearly did not have jurisdiction to entertain a theory of recovery, or, having jurisdiction, the federal court declined to exercise jurisdiction as a matter of discretion. Id. We have already determined that the federal court did have pendent jurisdiction over the malpractice and other state law claims. While it cannot be said that the federal court “clearly declined to exercise” its pendent jurisdiction over the state law claims, it did clearly decline jurisdiction over the malpractice claims.
Accordingly, for these reasons stated above, the judgment of the trial court sustaining the Exception of Res Judicata as to all matters except malpractice, are hereby affirmed.

AFFIRMED.